**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DAWN MALEC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 22CV5312 |
| v. ) | |
| ) | |
| The **CITY OF JOLIET**, and ) | |
| **JAMES CAPPARELLI**, City Manager, in his ) | |
| Official and Individual Capacities, ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Defendants.** ) | |

**COMPLAINT**

Plaintiff, Dawn Malec, by and through her attorneys, Asher, Gittler & D'Alba, Ltd., complains against Defendants, the CITY OF JOLIET, and City Manager JAMES CAPPARELLI, in his official capacity and as an individual, for deprivation of her constitutional due process rights under 42 USC § 1983, for defamation *per se* under Illinois law, for invasion of privacy under Illinois law, and for violations of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq*, and violations of the Illinois Uniform Peace Officers' Disciplinary Act, 50 ILCS 725/1 *et seq*. In support of her claims, Plaintiff states as follows:

**Nature of the Case**

1. Plaintiff complains of harm caused by Defendants' actions surrounding the attempted termination, demotion, and discipline of Plaintiff and subsequent publication of false and private related facts, in violation of the United States Constitution, 42 USC § 1983, and Illinois law.

**Jurisdiction and Venue**

2. This action arises under the United States Constitution, Amendment XIV, and

1

federal statutes, 42 U.S.C. §§ 1983 and 1988. This Court has jurisdiction over such claims under 28 U.S.C. § 1331, and 28 U.S.C. § 1343. The Court has supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this judicial district in accord with 28 U.S.C.§1391 (b) and (c), as Plaintiff and Defendants either reside in this district or have their principal place of business in this district, and all events giving rise to Plaintiff's claims occurred within this district.

## Parties

4. At all times relevant to this Complaint, Plaintiff Dawn Malec ("Malec"), an individual, resided in Joliet, Illinois, 60435, and was an employee of Defendant the City of Joliet.

5. At all times relevant to this Complaint, Malec was a public employee.

6. Defendant City of Joliet ("the City") is an Illinois Municipal Corporation located in Will County, Illinois.

7. Defendant City of Joliet is a "home-rule" unit of government, with the powers granted by Article VII, Section 6 of the Illinois Constitution.

8. Defendant James Capparelli ("Capparelli") was, at all times relevant to this Complaint, employed as the City Manager for the City of Joliet and is sued in both his official capacity and individually.

9. Upon information and belief, Capparelli resides in Will County, Illinois.

## Facts Common to all Counts

10. On or around July 8, 1994, Dawn Malec began working for the City of Joliet as a Police Officer.

11. Malec worked continuously as a sworn officer of various ranks for the City of Joliet until her forced retirement in July of 2022.

12. On July 15, 2009, Malec was promoted from Police Officer to Police Sergeant.

13. On November 20, 2014, Malec was promoted from Police Sergeant to Police Lieutenant.

14. As of January 1, 2021, Malec held the rank of Lieutenant.

15. Between July of 1994 and January of 2021, the vast majority of Malec's career with the City, Malec was rarely disciplined.

16. During her career, Malec has received several commendations for excellent service to the City of Joliet.

17. On or around January 11, 2021, Joliet City Manager Capparelli temporarily promoted Malec to Interim Chief of Police.

18. On or around February 12, 2021, Capparelli permanently promoted Malec to Chief of Police.

19. By City Ordinance Section No. 2-30.1, the City Manager has the authority to appoint individuals to the position of Chief of Police.

20. By City Ordinance Section No. 2-30.1, the Chief of Police serves in her position at the sole discretion of the City Manager.

21. On March 8, 2021, less than one month into her appointment as Chief of Police, Capparelli issued Malec her first disciplinary reprimand, accusing her of being insubordinate and uncooperative because she had failed to implement a body-worn camera policy and a social worker program as Capparelli had demanded she do.

22. Malec immediately drafted a letter in response, addressing Capparelli's concerns. Malec reported that she was working on both the body-worn camera policy and the social worker

program, explained the reasons they were not yet implemented, and asked Capparelli to come speak with her if he had concerns in the future, rather than issuing discipline.

23. Thereafter, Malec believed that the matter was resolved, because Capparelli never came to her to discuss either of these issues.

24. On September 9, 2021, Capparelli issued another reprimand to Malec.

25. This second reprimand accused Malec of insubordination and lack of professionalism for failure to implement the body-worn camera policy and social worker program.

26. Once again, Malec responded writing to Capparelli, explaining her progress on these programs and the reasons they were not fully implemented yet.

27. Capparelli never followed up with Malec regarding her response or to discuss her plans for these programs.

28. Instead, on September 23, 2021, Capparelli issued Malec another written reprimand, accusing her of poor judgment and violations of the Joliet Police Department General Orders, which Malec, as Chief of Police, is tasked with enforcing.

29. Once again, on September 27, 2021, Malec responded in writing to Capparelli explaining how her actions in fact followed the General Orders, contrary to his assertions.

30. In her response, Malec asserted that because Capparelli had conducted an investigation into her alleged misconduct and then issued discipline, in the form of the September 23, 2021 reprimand, without affording her the chance to be interviewed, the City, through Capparelli, had violated Malec's rights under the Illinois Uniform Peace Officers' Disciplinary Act ("UPODA"), 50 ILCS 725/1 *et seq.*

31. On October 6, 2021, Capparelli sent a letter to Malec which said, in relevant part, "based on your gross insubordination and failure to follow my instructions and those of City

Council, I have lost faith in your ability to effectively run the Joliet Police Department and as such, I am terminating your employment immediately."

32. At no point, either prior to issuing any of the disciplinary letters or after, did Capparelli have a conversation with Malec about any of the misconduct he alleged her to have committed.

33. The letters Malec submitted in response to the March 8, September 9, and September 23 disciplinary notices were not solicited by anyone at the City, including Capparelli.

34. Nevertheless, Malec hand delivered her response letters directly to Capparelli, Kathy Franson ("Franson"), Human Resources director, and Sabrina Spano ("Spano"), Corporation Counsel.

35. Upon information and belief, none of the response letters were actually reviewed by Spano, Franson, or Capparelli, and only two of them were added to her personnel file.

36. Malec was never given any meaningful opportunity to be heard, either before or after the disciplinary letters were issued, regarding the allegations of misconduct in the disciplinary letters of March 8, September 9, September 23, or October 6, 2021.

37. Capparelli and the City failed to conduct a full and fair investigation before imposing discipline against Malec.

38. Upon information and belief, Capparelli further told members of the City council that Malec had been insubordinate and failed to follow his orders and the Department's General Orders.

39. Upon information and belief, Capparelli or another agent of the City informed citizens of Joliet who were present at City council meetings around the time of Malec's termination

5

that Malec was being terminated because she was insubordinate and could not follow Department rules.

40. Under Joliet Ordinance 2-30.1(b)(1), any sworn officer of the Joliet Police Department who is appointed by the City Manager to the position of Chief of Police and subsequently removed from that position shall return to their previous position upon removal from service as Chief of Police.

41. Under the Illinois Municipal Code, 65 ILCS 5/10-2.1-4, "If a member of the department is appointed chief of police or chief of the fire department prior to being eligible to retire on pension, he shall be considered as on furlough from the rank he held immediately prior to his appointment as chief. If he resigns as chief or is discharged as chief prior to attaining eligibility to retire on pension, he shall revert to and be established in whatever rank he currently holds, except for previously appointed positions, and thereafter be entitled to all the benefits and emoluments of that rank, without regard as to whether a vacancy then exists in that rank."

42. As of October 6, 2021, Plaintiff had not yet served enough years to retire on full pension; therefore, because of the Joliet ordinance and the Illinois Municipal Code, Capparelli was prohibited from terminating Malec from her employment.

43. Under the Joliet ordinance and the Illinois Municipal Code, after removal from her position as Chief, Malec was supposed to return to active duty as a Lieutenant.

44. Instead, Capparelli ordered the new interim Chief of Police to strip Malec of her police powers and place her on desk duty.

45. After discovering that he could not actually terminate Malec, on October 6, 2021, Capparelli made it clear in another letter to Malec, sent on that same day, that he intended to seek

6

further discipline and to remove her from employment with the City, based on the alleged misconduct he had described in the letters of September 9, September 23, and October 6, 2021.

46. Thereafter, on Capparelli's orders, Malec reported to work in City Hall, where both employees and citizens of Joliet, who otherwise had no reason to know of the circumstances surrounding Malec's removal as Chief of Police, could see that she was not working as an active police officer and had been stripped of her police powers.

47. Upon information and belief, Capparelli published all of the disciplinary letters sent to Malec to the public by releasing them to the *Joliet Patch*, despite the fact that the allegations in those letters were false.

48. On October 6, 2021, the *Joliet Patch* published an article entitled "Dawn Malec Fired As Police Chief, Replaced By Robert Brown."

49. Therein, the article made it clear that Capparelli believed Malec was insubordinate, and that he had published statements to that effect to various third parties.

50. Therein, the *Joliet Patch* also quoted Todd Wooten, former member of the Joliet Board of Fire and Police Commissioners, as saying that Capparelli called Malec a "dumb, unmotivated lump."

51. Upon reading this article, Malec became aware that Capparelli had published false statements about her which damaged her reputation.

52. On November 8, 2021, the *Joliet Patch* published an article entitled "Dawn Malec Will Still Be Fired From Joliet_Capparelli Vows."

53. Therein, the *Joliet Patch* explained that Malec had been working at a desk in City Hall, thereby making it public knowledge that Malec was not permitted to return to her duties as a Police Lieutenant.

54. Malec remained on desk duty until November 23, 2021, when she was returned to full duty as a Lieutenant.

55. Malec's salary as a Lieutenant was significantly less than her salary as Chief. Because her pension payments were based on her highest earned salary in the previous year, Malec was therefore forced to retire from the Joliet Police Department effective July 7, 2022, or face a reduced pension.

56. But for the City and Capparelli's unlawful conduct, Malec would have continued working as Chief of Police for the City of Joliet until she reached thirty years of service and could retire with full pension benefits.

**Count I – Violation of 42 USC 1983, against the City of Joliet and James Capparelli, in his Official Capacity**

57. Plaintiff re-alleges and incorporates all previous paragraphs as if fully alleged herein.

58. At all times material to this Complaint, Plaintiff Dawn Malec was employed by the Defendant City of Joliet as either a Police Lieutenant or Chief of Police.

59. Contrary to the allegations of Capparelli in his disciplinary letters, and as explained in Plaintiff's written responses, Plaintiff performed all of the duties of her position as Chief of Police satisfactorily.

60. Illinois Law expressly sets forth a process for the removal of police chiefs in home rule units. *See* 65 ILCS 5/10-2.1-4 and 5/10-2.1-17.

61. 65 ILCS 5/10-2.1-4 requires that when home rule units wish to remove a chief of police from her position, the mayor of a municipality must file with the municipality's board "the reasons for such removal or discharge, which removal or discharge shall not become effective unless confirmed by a majority vote of the corporate authorities."

62. Further, the Illinois Uniform Peace Officers' Disciplinary Act, 50 ILCS 725/1 *et seq.* ("UPODA"), requires that if an investigation is conducted into the misconduct of a police officer, that police officer is afforded certain protections against unfounded allegations.

63. The Fifth and Fourteenth Amendments of the U.S. Constitution provide in relevant part that no person shall be deprived of life, liberty, or property without due process of law.

64. Because Malec was a police officer and a public employee, who under Illinois Law was protected from being fired at will, she had a protectable property interest in her employment as Chief of Police and the income and benefits she received as a result of that employment, which could not be taken by the City without due process of law.

65. The removal or demotion of a Police Officer deprives that Officer of his or her constitutionally-protected property interest.

66. Malec was not given any opportunity to be heard regarding the reasons for her discipline and subsequent removal as Chief.

67. The decision to remove Malec as Chief of Police was made by Capparelli in his official capacity as City Manager.

68. Upon information and belief, neither Capparelli nor anyone else employed by the City took into consideration the information provided by Malec in her response letters when making the decision to remove her as Chief of Police.

69. Since being removed from her position as Chief of Police, Plaintiff has not had any opportunity to be heard as to why her removal may have been improper.

70. Joliet Ordinance 2-30.1 grants the City Manager the sole discretion to appoint and remove the Joliet Chief of Police.

71. The City of Joliet, through its City Council, passed Joliet Ordinance 2-30.1 and gave that authority to the City Manager.

72. Joliet Ordinance 2-30.1 deprives the Joliet Police Chief of his or her rights under the Illinois Municipal Code and UPODA.

73. By adopting and enforcing Joliet Ordinance 2-30.1, the City of Joliet has created a process by which any person who serves in the position of Chief of Police of Joliet will automatically be deprived of his or her rights to notice and a fair hearing prior to removal, in violation of the due process clause of the United States Constitution, Amendment XIV, and the Illinois Constitution Article 1, Section 2.

74. In unilaterally removing Malec as Chief of Police, Capparelli was enforcing an express policy of the City.

75. Because the Defendants removed Plaintiff from her position as Chief of Police without due process of law, Defendants have violated her rights under 42 USC § 1983.

76. As a result of Capparelli's and the City's violations of Malec's constitutional rights, Malec is entitled to recover compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, and other non-pecuniary losses, with prejudgment interest, pursuant to 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant her the following Relief as to Count I:

    A. A declaratory judgment that Defendants' actions violated 42 U.S.C. § 1983;

B. A permanent injunction requiring that Defendants adopt employment practices and policies in accord with and in conformity to the requirements of 42 U.S.C. § 1983, including but not limited to the revision of Joliet Ordinance 2-30.1;

C. All wages and benefits Plaintiff would have received but for the Due Process violations, including but not limited to back pay, front pay, prejudgment interest, benefits and, if the Court deems it appropriate, reinstatement into her position;

D. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendants' conduct;

E. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F. An award of reasonable attorney's fees, costs, and litigation expenses, in accordance with 42 USC § 1988; and

G. Such other relief as the Court may deem just or equitable.

**Count II – Defamation per se against James Capparelli, in both his Official and Individual Capacities**

77. Plaintiff re-alleges and incorporates all previous paragraphs as if fully alleged herein.

78. Under Illinois law, a defendant is liable for defamation where he made a false statement about the plaintiff, that statement was published to a non-privileged third party, and the statement caused harm to the plaintiff.

79. Certain statements constitute defamation *per se*, where damages are presumed, because the harm to the plaintiff is apparent on the face of the statement.

80. Two categories of statements which constitute defamation *per se* are applicable to the instant matter: (1) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; or (2) words that impute a person lacks ability or otherwise prejudices that person in her or his profession.

81. Capparelli told at least one member of the Joliet Board of Fire and Police Commissioners that Plaintiff was a "dumb, unmotivated lump."

82. This statement is false and, on its face, causes harm to Plaintiff's reputation as a Police Officer and employee of the City of Joliet.

83. Upon information and belief, Capparelli told citizens of Joliet who were present at City Council meetings that Plaintiff was insubordinate and that she could not follow department rules.

84. These statements are false and impute that Plaintiff was unable to perform her employment duties.

85. Capparelli further stripped Plaintiff of her police powers and placed her on desk duty in City Hall, in a visible location, and, upon information and belief, told many people who did not need to know that he intended to fire her.

86. These acts and accompanying statements impute that Plaintiff lacks ability in her profession.

87. Capparelli published these statements about Plaintiff knowing that they were false and with a reckless disregard for their truth or falsity.

88. These statements, and others that may be discoverable in this action, constitute defamation *per se*.

89. Plaintiff became aware of the statements made by Capparelli on October 6, 2021, when the *Joliet Patch* published an account of these statements.

90. These statements by Capparelli were made in his official capacity as City Manager and/or on his own as an individual, but regardless of whether or not Capparelli's actions can be imputed to the City, the statements caused harm to Plaintiff, in violation of Illinois law.

91. Capparelli's statements were made with the malicious intent to not only injure Plaintiff but to permanently damage Plaintiff's reputation within the law enforcement community in the United States to destroy Plaintiff's ability to obtain similar future employment.

92. Caparelli's statements were the direct and proximate cause of harm to Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant her the following Relief as to Count II:

A. A declaratory judgment that Capparelli's statements constitute defamation *per se*;

B. Compensatory damages against Capparelli in his official capacity as an agent of the City, in an appropriate amount to be determined by the jury, but sufficient to compensate Plaintiff for the damage to her reputation and resulting loss of economic opportunity;

C. Punitive damages against Capparelli in his individual capacity, in an appropriate amount to be determined by the jury, but sufficient to deter the

individual defendant from continuing to make new defamatory comments against Plaintiff and to encourage compliance with the law.

## Count III: Violations of the Illinois Whistleblower Act against the City and Capparelli in his official capacity

93. Plaintiff re-alleges and incorporates all previous paragraphs as if fully alleged herein.

94. In approximately July of 2020, members of the prior Joliet Police Department Administration became aware that a Sergeant had engaged in criminally unlawful behavior.

95. In accordance with Department Policy, an administrative disciplinary investigation was conducted by the City, as had been done with at least two previous officers who had similarly engaged in criminal behavior.

96. Upon completion of the investigation in August of 2021, Plaintiff recommended that the Police Department move forward with discipline against the sergeant while he was awaiting trial on criminal charges. This was consistent with the process which had been used to discipline other officers who had engaged in criminal misconduct, and would afford the sergeant his due process regarding disciplinary actions the City planned to take against him.

97. Capparelli and the City Council interfered and told Plaintiff not to move forward with disciplinary proceedings against the sergeant.

98. Plaintiff believed that moving forward with discipline against this sergeant was consistent with Department rules and general orders and the Joliet Municipal Code, and was also necessary to avoid an inference of corruption within the Joliet Police Department.

99. Based on previous information received from the Mayor of Joliet, Malec believed it would be unethical for the City Council or Capparelli to have influence over the disciplinary procedure for the sergeant.

14

100. Plaintiff believed delaying the disciplinary proceedings would constitute favoritism on the part of the City towards the sergeant and disparate treatment of her employees, something she believed was prohibited in her role as a supervisor to public employees who were members of a union.

101. Plaintiff then requested a meeting in closed session of the City Council's executive committee, in hopes of convincing them to ignore Capparelli's orders not to proceed with discipline, because doing so would lead to an appearance of corruption and favoritism. She showed one member of the City Council a redacted version of the investigative report. In doing so, Plaintiff was disclosing, before a legislative body, what she reasonably believed to be a violation of State or local law, rules, or regulations, and/or disclosing what she reasonably believed to be public corruption or wrongdoing.

102. Thereafter, Capparelli issued the September 23, 2021 letter of discipline to Plaintiff, alleging that she had violated department rules by sharing the investigative report with City Council. Approximately two weeks later, Capparelli attempted to terminate Plaintiff's employment.

103. Capparelli's actions, in his official capacity as City Manager, in removing Malec as Chief, then stripping her of her police powers and placing her on desk duty in City Hall, were taken in retaliation for Plaintiff's actions described herein, which she took in order to disclose the potential for public corruption or wrongdoing by the City Manager and City Council, and because she reasonably believed that the City may have been violating the law.

104. Capparelli's actions, taken on behalf of the City, violated the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant her the following Relief as to Count III:

A. A declaratory judgment that the City, through Capparelli's actions, retaliated against Plaintiff, by removing her as Chief of Police after she revealed to City officials disclosing what she reasonably believed constituted a violation of the law and/or public corruption or wrongdoing, in violation of the Illinois Whistleblower Act;

B. Any remedy available under the Illinois Whistleblower Act, 740 ILCS 174/30, including:

(1) reinstatement with the same seniority status that she would have had, but for the violation;

(2) back pay, with interest; and

(3) compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees.

**Count IV – Violation of the Illinois Uniform Peace Officers' Disciplinary Act against the City of Joliet and James Capparelli in his Official Capacity**

105. Plaintiff re-alleges and incorporates all previous paragraphs as if fully alleged herein.

106. On September 23, 2021, Capparelli sent Plaintiff a letter indicating that he had determined she had violated several sections of the Joliet Police Department's General Orders.

107. The Illinois Uniform Peace Officers' Disciplinary Act, 50 ILCS 725/2(b), 725/2(c), 725/2(d), 725/3 ("UPODA") requires that when a municipal employer conducts an investigation into Officer misconduct which includes an interrogation or interview of the Officer, the Officer

must be interrogated or interviewed in conformance with certain procedures designed to protect the officer from unfounded discipline.

108. In the letter sent to Plaintiff on September 23, 2021, made it clear that he had conducted an investigation without interviewing or interrogating her.

109. On September 27, 2021, Plaintiff complained that Capparelli and the City of Joliet had, by failing to conduct a proper investigation into her alleged misconduct, violated her rights under UPODA.

110. Malec's complaint reflected her good faith belief that the City and Capparelli had violated her statutory rights under UPODA. As such, this complaint constituted an attempt by Malec to exercise her rights under that Act.

111. Section 7 of UPODA states, "No officer shall be discharged, disciplined, demoted, denied promotion or seniority, transferred, reassigned or otherwise discriminated against in regard to his or her employment, or be threatened with any such treatment as retaliation for or by reason of his or her exercise of the rights granted by this Act." 50 ILCS 725/7.

112. On October 6, 2021, less than ten days after Malec complained that Capparelli and the City had violated her rights under UPODA, Capparelli and the City attempted to terminate Plaintiff, demoted her, stripped her of her police powers, and forced her to work at a desk where citizens and colleagues could see she was being punished.

113. By their actions, the City and Capparelli retaliated against Plaintiff for asserting her rights under UPODA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant her the following Relief as to Count IV:

    A. A declaratory judgment that the City and Capparelli violated UPODA by retaliating against Plaintiff for asserting her rights thereunder;

    B. Any other relief this Court rules appropriate to make Plaintiff whole, including but not limited to any wages and benefits lost as a result of Defendants' actions and attorneys' fees and costs incurred in bringing this action.

### Count V – Invasion of Privacy/False Light against the City of Joliet

114. Plaintiff re-alleges and incorporates all previous paragraphs as if fully alleged herein.

115. After Plaintiff was removed from her position as Chief of Police, she retained an attorney to investigate her claims and attempt to negotiate a settlement with the City.

116. On or around November 23, 2021, Plaintiff's attorney sent a demand letter to the City, setting forth some of her claims and demanding payment for the harm the City had caused.

117. The demand letter contained confidential and private legal positions and opinions of Plaintiff and her attorney, which were not matters of public concern.

118. The information contained in the demand letter, if known to the public, could cause the Plaintiff harm because members of the public could form opinions which would be offensive to Plaintiff and her reputation as a police officer and citizen of Joliet.

119. On or around December 30, 2021, the demand letter, in its entirety, despite its clear designation as "Confidential," was published in the *Joliet Patch*, after it had been released by the City in response to a Freedom of Information Act ("FOIA") request.

120. Upon information and belief, the City could have withheld the demand letter under at least the exceptions in Sections 7(1)(c) and 7(1)(f) of the Illinois FOIA. 5 ILCS 140/7.

121. The City knowingly and maliciously released the demand letter to the *Joliet Patch*, in a deliberate attempt to harm Plaintiff's reputation and weaken her position in negotiations over the resolution of her claims.

122. By releasing the demand letter to the *Joliet Patch*, the City unreasonably invaded Plaintiff's privacy, placed her in a false light, and caused her reputational harm, in violation of Illinois Common Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant her the following Relief as to Count V:

A. A declaratory judgment that the City Invaded Plaintiff's Privacy and placed her in a False Light, in violation of Illinois law;

B. Compensatory damages, in an appropriate amount to be determined by the jury, but sufficient to compensate her for the damage to her reputation and resulting loss of economic opportunity as a result of the City's actions.

Plaintiff further prays that this Court award any other relief it deems just and proper to compensate for the harm caused her by Defendants' unlawful actions.

Dated: September 28, 2022

Respectfully Submitted,

By: */s/Naomi Frisch*

Matthew Pierce IL ARDC # 6326448
Naomi Frisch, IL ARDC Number 6328429
Plaintiff's Attorneys
Asher, Gittler & D'Alba, Ltd
200 W Jackson, Ste 720
Chicago, IL 60606
(312)263-1500
mjp@ulaw.com
naomi@ulaw.com