**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAWN MALEC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 5312** |
| | ) | |
| **CITY OF JOLIET and** | ) | |
| **CITY MANAGER** | ) | |
| **JAMES CAPPARELLI,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Dawn Malec was the Chief of Police for the City of Joliet until she was removed from the position on October 6, 2021. Malec has sued the City of Joliet and the Joliet city manager James Capparelli, in both his official and individual capacities, for wrongdoing in connection with her removal. Malec asserts claims for deprivation of her constitutional due process rights against the City and Capparelli in his official capacity (count 1); defamation *per se* under Illinois law against Capparelli in both his official and individual capacity (count 2); violations of the Illinois Whistleblower Act (IWA) against the City and Capparelli in his official capacity (count 3); violations of the Illinois Uniform Peace Officers' Disciplinary Act (UPODA) against the City and Capparelli in his official capacity (count 4); invasion of privacy/false light under Illinois law against the City (count 5); and discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (counts 6 and 7, respectively). The City and Capparelli have moved to dismiss

counts 1 through 5 on various grounds. They also request that the Court dismiss Capparelli in his official capacity from counts 1, 3, 4, 5, 6, and 7. For the reasons set forth below, the Court dismisses counts 3, 4, and 5 against both the City and Capparelli and also dismisses any and all claims against Capparelli in his official capacity. The Court denies the motion to dismiss with respect to counts 1 and 2.

## Background

Malec's complaint alleges the following facts, which, at this stage, the Court accepts as true. *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018).

From July 1994 to July 2022, Malec was employed as a Joliet police officer. At all times relevant to the complaint, Capparelli was Joliet's city manager. Joliet is a "home-rule" unit of government with powers granted by Article 6, Section 6 of the Illinois Constitution. Under Joliet City Ordinance section 2-30.1, the city manager has the authority to appoint individuals to the position of chief of police, and the chief serves in that position at the sole discretion of the city manager.

On January 11, 2021, pursuant to the just-cited ordinance, Capparelli appointed Malec as Interim Chief of Police. Malec was the first woman to hold the position. On February 12, 2021, Capparelli permanently appointed Malec to the position.

In August 2021–upon completion of a lengthy investigation of a police sergeant for criminally unlawful behavior–Malec recommended that the department move forward with discipline against the sergeant while he was awaiting trial. Malec alleges that "Capparelli and the City Council interfered and told [her] not to move forward with disciplinary proceedings against the Sergeant." First Am. Compl. ¶ 110.

2

Sometime before September 23, 2021—it is unclear from the complaint exactly when—Malec requested a closed meeting with the City Council's executive committee to discuss the issue. During the meeting, Malec disclosed a redacted investigation report to a member of the City Council in an effort to convince the Council to move forward with disciplining the sergeant. Malec alleges that she believed moving forward with disciplining the sergeant was "necessary to avoid an inference of corruption." *Id*. ¶ 111. She further alleges that she believed that Capparelli and the City Council's interference with her decision to pursue disciplinary action against one of her officers was unethical and inconsistent with Department rules and general orders, as well as the Joliet Municipal Code. Malec also alleges that she believed that "delaying the disciplinary proceedings would constitute favoritism on the part of the City towards the sergeant and disparate treatment of [Malec's] employees, something she believed was prohibited in her role as a supervisor to public employees who were members of a union." *Id*. ¶ 113.

On September 23, 2021, Capparelli sent a letter of discipline to Malec for her decision to discipline the sergeant and sharing the investigative report with City Council. Malec responded to Capparelli, explaining how she believed her actions were justified and also complaining that Capparelli had investigated her alleged misconduct and imposed discipline without affording her the chance to be heard via an interview. This, Malec said, violated her rights under the UPODA.

The September 23 disciplinary letter was the third in series of reprimands that Malec received from Capparelli during her tenure as chief of police. Malec alleges that, throughout the vast majority of her career as a police officer, she received several

commendations for her service and was rarely disciplined.  Then, shortly after being appointed as chief, on March 8, 2021, Capparelli issued Malec her first disciplinary reprimand for failing to implement a body-worn camera policy and social work program. Malec responded to the reprimand and explained that implementation of those policies and programs was in progress.  On September 9, 2021, Capparelli issued an additional reprimand for the same conduct, and Malec sent Capparelli a similar response.  Then came the September 23 reprimand regarding the disciplinary action against the sergeant.

Finally, on October 6, 2021, Capparelli sent a letter to Malec stating that, "'based on [Malec's] gross insubordination and failure to follow [his] instructions and those of City Council, [Capparelli] ha[s] lost faith in [Malec's] ability to effectively run the Joliet Police Department and as such, [is] terminating [Malec's] employment immediately." *Id*. ¶ 39.

Malec alleges that Capparelli never spoke to her directly about any of the misconduct he alleged she had committed, never engaged in a full and fair investigation regarding the alleged misconduct, and never gave Malec any meaningful opportunity to be heard either before or after reprimanding her on March 8, September 9, or September 23, or before or after terminating her on October 6.

In addition, Malec alleges that Capparelli told members of the City Council—and citizens of Joliet who were present at the City Council meeting around the time of her attempted termination—that Malec had been insubordinate and that she failed to follow both his orders and the Department's General Orders.  This, she alleges, was false and knowingly so.

4

Under Joliet City Ordinance section 2-30.1(b)(1) and 65 ILCS 5/10-2.1-4 of the Illinois Municipal Code, Malec was entitled to return to her previous position of lieutenant upon being removed from service as the Chief of Police.  Rather than restore her to her prior position as lieutenant, Malec alleges, Capparelli ordered the new interim chief to "strip Malec of her police powers and place her on desk duty" in the middle of City Hall.  *Id.* ¶ 52.

Also on October 6, 2021, Malec alleges that Capparelli sent her a second letter telling her that he intended to seek further discipline and permanently remove her from service with the police department based on the same alleged misconduct referenced in the September 9, September 23, and October 6 written reprimands.  That same day, a local newspaper, the *Joliet Patch* published an article titled "Dawn Malec Fired As Police Chief, Replaced By Robert Brown."  The article included copies of all the reprimand letters Capparelli had sent to Malec and stated that Capparelli believed Malec to be insubordinate.  It also quoted a member of Joliet's Board of Fire and Police Commissioners as saying that Capparelli called Malec a "dumb, unmotivated lump."

On November 8, 2021, the *Joliet Patch* published an article titled "Dawn Malec Will Still Be Fired From Joliet: Capparelli Vows."  On November 23, 2021, Malec was removed from desk duty and returned to full duty as a police lieutenant.

Because Malec's pension was based on her highest earned salary in the previous year—and because her salary as lieutenant was less than her salary as chief of police—Malec alleges that she was effectively forced to retire from the police department on July 7, 2022 to avoid a reduced pension.  Malec further alleges that but for the defendants' misconduct, she would have continued working as chief "until she

reached thirty years of service and could retire with full pension benefits." *Id*. ¶ 68.

Discussion

The defendants have moved to dismiss Malec's claims for failure to state a claim. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**A.     Official capacity claims against Capparelli**

As a threshold matter, the City and Capparelli ask to dismiss Capparelli from the counts in which Malec names him in his official capacity alongside the City (counts 1 and 3-7). Because the City is already named as a defendant on those claims, naming Capparelli in his official capacity is superfluous. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *see also Schmidling v. City of Chicago*, 1 F.3d 494, 495 n1 (7th Cir. 1993) (affirming dismissal of the mayor of Chicago sued in his official capacity alongside the City of Chicago). The Court therefore grants the defendants' request to dismiss Capparelli in his official capacity from counts 1, 3, 4, 5, 6, and 7.

**B.     Section 1983 claim against City**

In count 1, Malec asserts a claim under section 1983 alleging that the City violated her constitutional rights by removing her as Chief of Police without due process.

6

To state a viable due process claim, Malec must allege that: (1) she had a constitutionally protected property interest; (2) she suffered a deprivation of that property interest; and (3) the deprivation occurred without due process. *See Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). To show a protected property interest in the public employment context, the terms of employment must provide that the termination will only be "for cause," or there must be some other "mutually explicit understanding[] of continued employment." *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1039 (7th Cir. 2021). *See also, e.g., Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997); *Bounds v. Country Club Hills Sch. Dist. 160*, 64 F.4th 926, 2023 WL 2852621, at *2 (7th Cir. Apr. 10, 2023); *Carmody v. Bd. of Trs. of Univ. of Ill.*, 747 F.3d 470, 474 (7th Cir. 2013). The City argues that Malec cannot satisfy this element because, under applicable law, she had no such understanding.

Malec asserts two sources of just cause protection against her termination: 65 ILCS 5/10-2.1-4 (the Illinois Municipal Code) and the UPODA. The Court will address each in turn.

### 1. Illinois Municipal Code

The Illinois Municipal Code has unequivocal language providing that a member of the police department may not be removed except for cause. 65 ILCS 5/10-2.1-17 ("Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged *except for cause, upon written charges, and after an opportunity to be heard in his own defense*.") (emphasis added). The Code also states, however, that "if . . . the chief of the police department . . . [is] appointed in the manner provided by ordinance, they may be

removed or discharged by the appointing authority" and describes the process by which

that should occur.  *Id*.  Moreover, the City—which is a home-rule municipality—enacted

its own ordinance stating that the Chief could be removed "at the sole discretion of the

City Manager."  First Am. Compl. ¶ 22.  As previously noted, Malec was appointed and

removed via the city ordinance.

The City contends, and the Court agrees, that as a matter of Illinois law, the

Joliet ordinance trumps the pertinent provision of the Illinois Municipal Code.  *See*

*Stryker v. Village of Oak Park*, 62 Ill. 2d 523, 528, 343 N.E.2d 919, 923 (1976) ("A

statute intended to limit or deny home rule powers must contain an express statement

to that effect.").  The Municipal Code contains no such statement.  *See also*, *Mandarino*

*v. Village of Lombard*, 92 Ill. App. 3d 78, 81, 414 N.E.2d 508, 510 (1980) ("[S]ection 10-

2.1-4 is not a limitation on the home-rule village's power to adopt different procedures

for discharging its police chief.").  Malec contends that the two provisions can co-exist,

but the Court fails to see–and Malec fails to plausibly explain–how that is possible:  they

are contradictory in this regard.  In short, Malec's position as police chief was governed

by Joliet city ordinance, which allowed her removal at the city manager's discretion, and

not by the Illinois Municipal Code's good cause requirement.  Neither the Municipal

Code nor the city ordinance conferred a property interest.

Malec suggests that if the Court agrees with the City that the ordinance trumps

the Illinois Municipal Code, she nevertheless has adequately alleged all of the elements

of a due process claim against the City.  Malec's contention is that, by using its home-

rule authority to adopt an ordinance under which the Chief of Police served at will, the

City violated her due process rights by eliminating the property interest that she would

have had if the Municipal Code applied.  Malec cites no authority supporting this contention, nor is the Court aware of any.  That aside, Malec's contention makes no sense.  She cannot possibly have any property interest via a state enactment under a scheme of governance under which a municipality like Joliet is legally entitled—by virtue of home role—to displace the state enactment via its own ordinance.

### 2. UPODA

Malec contends alternatively that a property interest in her continued employment arises from certain provisions of the UPODA.  The City argues that the UPODA provisions upon which Malec relies concern only procedural protections, not substantive just-cause protection against termination.  If so, the City correctly argues, the statute does not give rise to a property interest in continued employment.  *Miyler v. Village of E. Galesburg*, 512 F.3d 896, 898 (7th Cir. 2008) (procedural guarantees are not sufficient to establish property right); *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989) ("If a statute or regulation merely delimits what procedures must be followed before an employee is fired, then it does not contain the requisite substantive predicate.").

Malec cites several different provisions within the UPODA as giving her just-cause protection.  The first group includes sections 2(b), (c), (d), and 3, all which Malec alleges require "that when a municipal employer conducts an investigation into Officer misconduct which includes an interrogation or interview of the Officer, the Officer must be interrogated or interviewed in conformance with certain procedures designed to protect the officer from unfounded discipline."  First Am. Compl. ¶ 120.  The second is section 7, which provides that "[n]o officer shall be discharged, disciplined, demoted,

9

denied promotion or seniority, transferred, reassigned or otherwise discriminated against in regard to his or her employment, or be threatened with any such treatment as retaliation for or by reason of his or her exercise of the rights granted by this Act."  50 ILCS 725/7.

Malec concedes that sections 2(b), (c), (d), and 3 do not, on their own, give rise to a property interest; these provisions offer only procedural protections.  Pl.'s Resp. at 2 (citing *Cain*, 879 F.2d at 1427).  She contends, however, that the anti-retaliation provision in section 7 of the UPODA gives rise to a property interest.  The City disagrees.

On this point, both parties cite *Cain*.  In *Cain*, the Seventh Circuit held that the particular provisions of the UPODA cited by the officer in that case provided only procedural rules for disciplining officers, not "substantive guidelines."  *Cain*, 879 F.2d at 1427.  The court went on to note, however, that UPODA had "one substantive provision"—the anti-retaliation provision also cited by Malec—that "goes beyond specifying procedures to be followed and provides a substantive guarantee [that] officers may not be discharged for engaging in a particular kind of conduct."  *Id.*  This part of *Cain* is dicta, as the officer in that case "d[id] not cite this provision."  *Id.*  Malec contends, however, that it at least implicitly confirms that this aspect of UPODA, if at issue—as Malec alleges in her complaint—is a sufficiently substantive protection to confer a property interest in continued employment.

The Court disagrees.  *Cain* does not hold that a simple anti-retaliation statute (or employment term) gives rise to a property interest, and Malec cites no other case that so holds.  A holding that this is enough would sweep quite broadly and would effectively

give *every* public employee constitutional due process protection. For if a law (or contractual provision) prohibiting termination for retaliatory provisions were enough, then logically *any* law or contractual provision imposing specific substantive prohibitions on termination would likewise suffice. And all, or virtually all, public employees are protected by prohibitions against adverse action based on race, gender, national origin, disability, and other bases. If UPODA's anti-retaliation prohibition is enough to create a property interest, then so are these prohibitions—and as a result, all governmental employees are subject to constitutional due process protection. Whatever one might think of this as a policy matter, there is no support for it in the law. What is required in this context, as the cases say, is a mutually explicit understanding of continued employment. The Court concludes that UPODA's anti-retaliation prohibition is not enough to give rise to a *general* understanding of continued employment, which is what the Court concludes is required.

For these reasons, the Court dismisses count 1 of Malec's amended complaint.

**C.     Defamation per se claim against Capparelli**

In count 2, Malec asserts a claim of defamation *per se* against Capparelli in both his official and individual capacities. Malec alleges that "Capparelli told at least one member of the Joliet Board of Fire and Police Commissioners that [she] was a 'dumb, unmotivated lump.'" First Am. Compl. ¶ 94. She further alleges that "Capparelli told citizens of Joliet who were present at City Council meetings that Plaintiff was insubordinate and that she could not follow department rules." *Id.* ¶ 95. Malec alleges that "Capparelli further stripped [her] of her police powers and placed her on desk duty in City Hall, in a visible location, and, upon information and belief, told many people who

did not need to know that he intended to fire her." *Id.* ¶ 98. These statements and accompanying actions, Malec alleges, constitute defamation *per se*.

Capparelli contends that Malec's defamation claim is barred by the Illinois Tort Immunity Act (TIA), and that even if not, it fails on the merits. The Court will first take up the question of immunity and then turn to the claim's merits.

### 1. Tort Immunity Act

#### a. Capparelli – official capacity

Count 2 is the only official capacity claim against Capparelli that he did not ask the Court to dismiss on that basis. But as previously discussed, suing Capparelli in his official capacity is tantamount to suing the City. And the City is absolutely immune from defamation claims under section 2-107 of the TIA, which provides that "[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-107. This provision, on its face, immunizes the City from liability in defamation suits. *See Ramos v. City of Peru*, 333 Ill. App. 3d 75, 80, 775 N.E.2d 184, 188-89 (2002) (dismissing, among other claims, a defamation claim against a city because it was barred by section 2-107). The Court therefore dismisses Capparelli in his official capacity from count 2 on this basis.

#### b. Capparelli – individual capacity

Capparelli contends that, in his individual capacity, he is immune from Malec's defamation claim under section 2-210 of the TIA, which provides that "[a] public employee acting in the scope of his employment is not liable for an injury caused by his

negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-210. The Court disagrees.

The Court reaffirms in this regard its decision in *Logan v. City of Evanston*, No. 20 C 2736, 2020 WL 6020487 (N.D. Ill. Oct. 12, 2020). In *Logan*, the Court adopted the reasoning from Judge Joan Gottschall's decision in *Robertson v. Lofton*, No. 13 C 3205, 2013 WL 5796780 (N.D. Ill. Oct. 25, 2013), in which she ruled that section 2-210 precludes claims arising from "negligent misrepresentation or [ ] provision of information" but not those arising from knowingly defamatory statements. In other words, section 2-210 applies only to *negligent* misrepresentations. Malec alleges that "Capparelli's statements were made with malicious intent," First Am. Compl. ¶ 104, and that he "published these statements about [Malec] knowing that they were false and with a reckless disregard for their truth or falsity. *Id.* ¶ 101. Thus, section 2-210 does not immunize Capparelli on a claim against him in his individual capacity.

Capparelli cites *Klug v. Chicago School Reform Board of Trustees*, 197 F.3d 853 (7th Cir. 1999), for the proposition that "so long as the alleged statements were made within the scope of the official's duties, the official is absolutely immune from liability, and cannot be 'overcome by a showing of improper motivation or knowledge of the statement's falsity, including malice.'" Defs.' Reply at 8 (quoting *Klug*, 197 F.3d at 861). But Capparelli made this point for the first time in his reply brief, so he forfeited the point for purposes of the motion to dismiss. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."). But that aside, *Klug* does not appear to control

this case, as it does not concern the TIA but rather a different apparent form of immunity. *Klug*'s very brief discussion of what it refers to as immunity is based on *Blair v. Walker*, 64 Ill. 2d 1, 349 N.E.2d 385 (1976), which appears to concern common-law privilege in the law of defamation—another point that Capparelli forfeited by not arguing it—and, that aside, it concerned the liability of "high executive officials" of the State, not the immunity of local government officials, which is governed by the TIA. *Id.* at 6, 349 N.E.2d at 387. The Court therefore overrules Capparelli's immunity defense as a basis for dismissal for failure to state a claim.

### 2. Merits

"A statement is defamatory under Illinois law if it 'tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person.'" *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016) (quoting *Tuite v. Corbitt*, 224 Ill. 2d 490, 501, 866 N.E.2d 114, 121 (2006)). "The *per se* designation applies if the defamatory character is obvious and apparent on its face and injury to the plaintiff's reputation may be presumed." *Huon*, 841 F.3d at 738. In Illinois, statements "that impute a person is unable to perform or lacks integrity in performing her or his employment duties" or "that impute a person lacks ability or otherwise prejudices that person in her or his profession" are considered defamatory *per se*. *Dobias v. Oak Park & River Forest High Sch. Dist.* 200, 2016 IL App (1st) 152205, ¶ 54, 57 N.E.3d 551, 562.

Malec alleges that Capparelli's statements and actions imputed that she was unable to perform, or lacked integrity or ability in performing, her duties as Chief and that they prejudiced her within the Police Department. Malec further alleges that

Capparelli's statements were false and caused harm to her reputation. Capparelli contends that (1) the alleged "dumb, unmotivated lump" comment is non-actionable opinion because it involves a non-verifiable condition; and (2) the comments to the City Council about Malec being insubordinate are subject to the innocent construction rule.

The Court concludes that the "dumb, unmotivated lump" comment is a non-actionable opinion. "To determine whether a statement is one of fact or opinion, Illinois courts consider the totality of the circumstances and whether the statement can be objectively verified as true or false." *Quiroz v. Hartgrove Hosp.*, No. 97 C 6515, 1999 WL 281343, at *15 (N.D. Ill. Mar. 25, 1999) (citing *Barakat v. Matz*, 271 Ill. App. 3d 662, 671, 648 N.E.2d 1033, 1041 (1995)). Courts have repeatedly held that referring to a person as "dumb" or "stupid" is a nonactionable expression of opinion because such statements cannot be objectively verified and are inherently subjective. *See, e.g., Doherty v. Kahn*, 289 Ill. App. 3d 544, 557, 682 N.E.2d 163, 172 (1997) (statements that the plaintiff was, among other things, "incompetent," "lazy," and "dishonest" were nonactionable expressions of opinion); *see also Quiroz*, 1999 WL 281343, at *15 (finding statements calling plaintiff "incompetent" and "stupid" were "not capable of being proven true or false as they are inherently subjective."). The Court therefore concludes that Malec cannot maintain a defamation claim based on these particular comments by Capparelli.

Turning to Capparelli's alleged statement that Malec had been "insubordinate," Capparelli cites the so-called "innocent construction" rule in seeking dismissal. This doctrine requires courts, in consideration defamation claims, to give "the defendant's words their natural and obvious meaning, after having considered both the substance of

defendant's alleged statements and the context in which they allegedly were made." *Huon*, 841 F.3d at 738. To qualify for protection under the innocent construction rule, the innocent interpretation "must be *reasonable*." *Giant Screen Sports v. Canadian Imperial Bank of Com.*, 553 F.3d 527, 533 (7th Cir. 2009). "The rule does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable." *Id.* (citing *Tuite*, 224 Ill. 2d at 504-05, 866 N.E.2d at 123). Application of the rule is a question of law. *Id.*

The Court overrules Capparelli's argument that his statements are protected under the innocent construction rule. Capparelli contends that his statements "simply addressed [Malec's] performance as a City employee." Defs.' Mot. to Dismiss at 8. But that's not the normal understanding of the term "insubordinate." The Court finds this argument unpersuasive, at least on the present record—which consists at this point only of Malec's amended complaint. A defamatory meaning—particularly when considered in the context of Malec's ongoing disputes with Capparelli and his reassignment of Malec to desk duty in a public area—is more plausible on the present record than Capparelli's proposed construction. "[T]he context of a statement is critical in determining its meaning," *Tuite*, 224 Ill. 2d at 512, 866 N.E.2d at 127, and the context here does not suggest that Malec was merely citing substandard performance as a city employee. The Court declines to dismiss count 2 to the extent it is based on this statement.

## D.    IWA claim against the City

In count 3, Malec asserts a claim under the Illinois Whistleblower Act (IWA) against the City. Under the IWA, "[a]n employer may not retaliate against an employee

for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). Malec alleges that the City retaliated against her in violation of the IWA when it removed her as Chief of Police after she disclosed to a member of City Council the previously-referenced investigation report related to criminal conduct by a police sergeant whom Capparelli and the City Council had told her not to discipline, in an effort to convince the City Council to move forward with disciplining the sergeant.

To state a claim for relief under the IWA, Malec must allege "(1) an adverse employment action by . . . her employer, (2) which was in retaliation (3) for [her] disclosure to a government or law enforcement agency (4) of a suspected violation of an Illinois or federal law, rule, or regulation." *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶ 15, 79 N.E.3d 184, 188.

Regarding the third required element—a disclosure—the City contends, and the Court agrees, that Malec did not "disclose" anything within the meaning of Section 15(b) of the IWA. The disclosure here was made to the same entity—the City Council—that Malec claims was violating state or local law, rules, or regulations, and/or engaging in corruption or wrongdoing. In *Sweeney*, the Illinois Appellate Court held that

> [s]imply having a conversation with the wrongdoer about the impropriety of his or her actions is not exposing the alleged improper activity, making it known, or reporting the wrongful conduct. The fact the violator is the employee's boss does not alter the analysis, as the information is still not disclosed. We hold section 15(b) of the Whistleblower Act does not protect an employee who simply notes the impropriety of conduct with the alleged wrongdoer, as that does not constitute the disclosure of information under the Whistleblower Act.

*Id.* In her response, Malec focuses solely on the fact that disclosure under the IWA

17

includes reports made to an employee's own employer. But *Sweeney* clearly held that disclosure to the wrongdoer—even if the wrongdoer is the plaintiff's employer—does not fall within the meaning of disclosure under section 15(b) of the IWA.

For this reason, the Court dismisses count 3 for failure to state a claim.

### E.     UPODA claim against the City

In count 4, Malec asserts a claim under section 7 of the UPODA. As previously addressed, section 7 provides that "[n]o officer shall be discharged, disciplined, demoted, denied promotion or seniority, transferred, reassigned or otherwise discriminated against in regard to his or her employment, or be threatened with any such treatment as retaliation for or by reason of his or her exercise of the rights granted by this Act." 50 ILCS 725/7. Malec alleges that she was terminated in retaliation for asserting her rights under the UPODA via a letter she sent to Capparelli. In her letter, Malec asserted her right to have a proper investigation into her alleged misconduct conducted prior to her being disciplined, a right she alleges is set out in sections 2(b), (c), (d), and 3 of the statute.

The City contends that Malec's UPODA claim fails because the UPODA does not require the employer to interview or interrogate the at-issue officer. Thus, the City contends, Malec did not engage in protected activity by complaining that she was not interviewed, and as a result the City and Capparelli did not engage in actionable retaliation.

To succeed on a retaliation claim, a plaintiff need not prove that the underlying conduct actually violated her rights; instead, she need only establish that she had a sincere and reasonable belief that the practice she was opposing was unlawful.

*Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 706–07 (7th Cir. 2000).[1]  Malec contends that she reasonably believed that the UPODA required an interview prior to discipline being issued; the City contends that her belief was objectively unreasonable given the plain language of the statute.

The Court agrees with the City.  The UPODA sets forth the procedures an employer must follow when interviewing or interrogating a police officer as part of an investigation into officer misconduct.  *See* 725 ILCS 3, 3.1-3.11.  But these apply when an officer *is* interrogated.  Nothing in the statute entitles the officer to an interview or interrogation or specifies when any interrogation must take place in relation to imposition of discipline.  Malec concedes in her response brief that "Defendants are correct that UPODA does not require an interrogation to take place before discipline is issued."  Pl.'s Resp. at 13.  The Court does not doubt—in fact on a motion to dismiss it cannot doubt—that Malec believed she was entitled to be interviewed, but she offers no basis that would permit a finding that her belief was reasonable.  *See, e.g., Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 771 (7th Cir. 2008) ("[t]he objective reasonableness of the belief is not assessed by examining whether the conduct was persistent or severe enough to be unlawful, but merely whether it falls into the category of conduct prohibited by the statute.").

For this reason, the Court dismisses count 4.

### F.  Invasion of privacy/false light claim against the City

In count 5, Malec asserts an invasion of privacy/false claim against the City.

---

[1] *Hamner* is a Title VII retaliation case, but both parties cite cases involving Title VII as analogous, due to a dearth of caselaw under UPODA.  The Court therefore does the same.

19

After her removal as Chief, Malec consulted an attorney to investigate her claims and pursue the possibility of settlement with the City. Malec alleges that the City wrongfully released—pursuant to a request made under the Illinois Freedom of Information Act (FOIA)—a settlement demand letter marked as confidential that her attorney drafted and sent to the City. The letter was later published in the local newspaper, which Malec claims placed her in a false light. Malec also contends that the City could have withheld the letter from disclosure under the exceptions in sections 7(1)(c) and 7(1)(f) of the Illinois FOIA. *See* 5 ILCS 140/7.

The City contends, and the Court agrees, that this claim is barred under section 2-107 of the TIA. As discussed earlier, under section 2-107, "[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-107. This provision immunizes the City from liability in defamation suits, and it has likewise been applied to false light claims. *See Ramos,* 333 Ill. App. 3d at 80, 775 N.E.2d at 188-89 (dismissing, among other things, a false light invasion of privacy claim against a city because it was barred by section 2-107). Malec reiterates her arguments from count 2 regarding the TIA immunizing only *negligent* "'misrepresentation or . . . provision of information.'" Pl.'s Resp. at 13 (quoting the TIA). But that language is found in section 2-210 of the TIA, which governs the liability of a public official, not section 2-207, which governs the liability of the governmental entity itself. Because Malec asserts this claim only against the City, section 2-210 does not apply.

Even if the City did not enjoy absolutely immunity under section 2-107, Malec's

20

false light claim would fail on the merits. To state a claim for invasion of privacy/false light, Malec must allege that (1) she was "placed in a false light before the public as a result of defendants' actions"; (2) this "would be highly offensive to a reasonable person"; and (3) the defendants acted "with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 18, 607 N.E.2d 201, 210 (1992). Malec has not alleged that any of the statements in her attorney's demand letter were false or that the City knew them to be false.

For these reasons, the Court dismisses count 5.[2]

**G. Title VII claims**

Neither the City nor Capparelli moved dismiss counts 6 and 7, which allege violations of Title VII. Rather, they requested only that Capparelli be dismissed in his official capacity from these counts, which the Court has already addressed.

## Conclusion

For the foregoing reasons, the Court dismisses Malec's claims under 42 U.S.C. § 1983, the IWA, and the UPODA, and for invasion of privacy (counts 1, 3, 4, and 5) but declines to dismiss her defamation claim (count 2). The Court also dismisses all of Malec's claims against Capparelli to the extent he is sued in his official capacity. The defendants are directed to answer by May 22, 2023 any claims that they have not

---

[2] In a footnote, Malec asks the Court to convert her invasion of privacy/false light claim into an invasion of privacy/public disclosure of private facts claim. But even were the Court to do that, Malec's claim would still be barred by section 2-210 of the TIA for reasons already stated. The Court therefore overrules Malec's request.

already answered.   The case remains set for a status hearing on May 15, 2023.

Date:  May 2, 2023

_____
MATTHEW F. KENNELLY
United States District Judge